UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| George N. Zazzali, M.D., <br><br> Plaintiff, <br><br> v. <br><br> VitalCore Health Strategies, LLC, <br><br> Defendant. | Civil Action No. 2:24-cv-1015-kjd |

## OPINION AND ORDER
(Doc. 11)

     Plaintiff George N. Zazzali, M.D., brings this diversity action against VitalCore Health Strategies, LLC (VitalCore)—an entity that contracts with the State of Vermont to provide healthcare services for the Vermont Department of Corrections (DOC)—alleging unlawful retaliation against Plaintiff in violation of the Vermont False Claims Act (VFCA) and Vermont common law prohibiting wrongful discharge contrary to public policy. Dr. Zazzali generally alleges that he was discharged as chief medical officer of operations after reporting concerns to various VitalCore officials, including VitalCore's alleged forgery of his signature on a policy manual submitted to State of Vermont officials, VitalCore's buprenorphine prescribing practices, allegedly inadequate healthcare staffing in the corrections system, and VitalCore's alleged use of medical equipment in a state of disrepair.

     VitalCore has filed a Motion to Dismiss the Complaint for failure to state a claim. (Doc. 11). VitalCore argues that Dr. Zazzali's VFCA retaliation claim should be dismissed because Dr. Zazzali did not follow the procedural requirements of the VFCA and the Complaint does not allege that VitalCore submitted a false or fraudulent claim for payment to the government or that

Dr. Zazzali acted in furtherance of a qui tam suit. (Doc. 11-1 at 1–2.) VitalCore further contends that the existence of a statutory remedy under the VFCA preempts Dr. Zazzali's wrongful discharge claim. (*Id.* at 10.) VitalCore seeks attorney's fees under 32 V.S.A. § 637, asserting that Dr. Zazzali's VFCA claim is "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." (*Id.* at 9.)

Dr. Zazzali responds that retaliation claims under the VFCA need not follow the procedural requirements for qui tam suits, and he engaged in protected activity by opposing VitalCore's attempt to fraudulently submit the signed policy manual in order to receive payment under its contract with the State of Vermont. (Doc. 19 at 1, 5–8.) Dr. Zazzali also contends that the VFCA does not preempt his wrongful discharge claim because the claim is based on violations of public policy not covered by the VFCA—namely, his opposition to VitalCore's allegedly substandard medical care. (*Id.* at 9–10.)

For the reasons explained below, VitalCore's Motion to Dismiss is DENIED.

### **Factual Background**

The following allegations from the Complaint are taken as true for the purposes of the Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

In March 2021, VitalCore hired Dr. Zazalli as its chief medical officer of operations in Vermont. (Doc. 5 at 2, ¶ 7.) At the time, VitalCore contracted with the State of Vermont to provide healthcare services to individuals incarcerated in Vermont. (*Id.* ¶ 6.) While the Complaint does not indicate when Dr. Zazzali began work for VitalCore, it does state that Dr. Zazzali signed several brief VitalCore policy documents in or about May or June 2021. (*Id.* ¶ 8.)

In August 2021, Dr. Zazzali discovered that VitalCore had forged his signature on a 511-page policies and procedures manual. (*Id.* ¶ 9.) VitalCore submitted this manual to Vermont state officials without his knowledge or approval. (*Id.*) Dr. Zazzali immediately reported the forgery to his supervisor, Dr. Stephanie Sullivan. (*Id.* ¶ 10.) Dr. Sullivan denied that VitalCore had submitted Dr. Zazzali's forged signature to the State of Vermont. (*Id.*) Dr. Sullivan then escalated his concerns to VitalCore's CEO, Viola Riggin, but she took no action to investigate the forgery. (*Id.* at 3, ¶ 11.)

During a meeting with Vermont state officials in mid-August 2021, Dr. Zazzali observed that state officials presented slides that included excerpts from the same policy manual that contained his forged signature. (*Id.* ¶¶ 12–13.) He again informed Dr. Sullivan that VitalCore had fraudulently submitted his signature and asked her to retract the document, but she refused to take action. (*Id.* ¶ 13.)

In August 2021, Dr. Zazzali accompanied Dr. Branham Tomarchio[1] and VitalCore's director of nursing, Heather Ungeheur, on a tour of Vermont's six correctional facilities. (*Id.* at 4, ¶ 18.) Over three days of visits, Dr. Zazzali observed several deficiencies. He found that the medical equipment was in a state of neglect and disrepair, suggesting years of inadequate maintenance. (*Id.* ¶ 19.) He also discovered that VitalCore understaffed the facilities, leaving just one psychiatric provider to cover the entire prison system. (*Id.* ¶ 17.) Additionally, VitalCore allowed nurses to conduct medical examinations that only physicians, physician's assistants, or nurse practitioners were authorized to perform. (*Id.* ¶ 19.) In some cases, female nurses were left

---

[1] The Complaint does not provide Dr. Tomarchio's job title at VitalCore, but alleges that VitalCore "assigned Dr. Tomarchio to assist Zazzali's training in or about the second week of August 2021." (Doc. 5 at 3, ¶ 14.)

3

alone in rooms with multiple incarcerated men at a time without a guard, creating a safety concern. (*Id.*)

Dr. Zazzali also identified concerns with VitalCore's provision of buprenorphine within the corrections system. He found that the company prescribed buprenorphine to approximately sixty percent of incarcerated individuals in Vermont. (*Id.* at 3–4, ¶¶ 15–16.) Dr. Tomarchio was unable to confirm that the patients receiving buprenorphine had all met with a licensed clinician before receiving the prescription medication. (*Id.* at 4, ¶ 16.)

In late August 2021, Dr. Zazzali expressed concerns to Dr. Tomarchio and Director Ungeheur about the forged signature and further noted that VitalCore "failed to comply with its representations within those policies and state laws by providing sub-standard levels of care." (*Id.* ¶ 20.) In response, Dr. Tomarchio retracted the forged policy manual and advised Dr. Zazzali to sign the policies and re-submit them. (*Id.* at 5, ¶ 21.)

Several days later, after Dr. Zazzali expressed hesitation to sign the policy manual based on his observations of noncompliance, Dr. Tomarchio advised Dr. Zazzali that he should "do as [he was] told" and sign the manual. (*Id.* ¶ 22.) He explained that if Dr. Zazzali refused to do so, Vermont "would not pay VitalCore as scheduled and that [CEO Viola] Riggin would be upset." (*Id.*) Dr. Zazzali advised Dr. Tomarchio and Director Ungeheur that he had "grave concerns" that signing the manual would implicate him in a violation of the FCA. (*Id.* at 5, ¶¶ 23–24.)

On August 26, 2021, after his conversations with Dr. Tomarchio about the policy manual, Dr. Zazzali reported to CEO Riggin that Dr. Sullivan had treated him poorly after he raised concerns about the forged signature. (*Id.* ¶ 26.) VitalCore terminated his employment the next day. (*Id.* ¶ 27.) During the termination process, Dr. Sullivan referenced the mid-August

4

meeting—when Dr. Zazzali reported the forgery—and Dr. Zazzali's conversations with Dr. Tomarchio as factors in the decision to terminate his employment. (*Id.* at 5–6, ¶ 28.)

Dr. Zazzali alleges that the State of Vermont "relied upon the false records submitted by VitalCore that contained forgeries of Zazzali's signature to ensure that VitalCore was compliant with the requirements of its contract with the state before issuing payments to VitalCore." (*Id.* at 6, ¶ 29.)

## Analysis

To state a claim for relief, a complaint must contain a short and plain statement of the grounds for the court's jurisdiction; a short and plain statement of the claim showing that the claimant is entitled to relief; and a demand for the relief sought. Fed. R. Civ. P. 8(a)(1)–(3). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

The VFCA largely mirrors the federal False Claims Act (FCA). Because courts construing the VFCA should be "guided by the construction of similar terms contained in the Federal [FCA]," 32 V.S.A. § 641(b), the Court looks to federal decisions construing the FCA to guide its interpretation of the VFCA.

**I.  The retaliation claim under the VFCA survives dismissal.**

**A.  Retaliation claims under the VFCA are not subject to the procedural requirements of 32 V.S.A. § 632.**

The FCA provides for three causes of action: (1) an action for compensation filed by the Attorney General, *see* § 31 U.S.C. § 3730(a); (2) a qui tam action filed by an individual, *see* § 3730(b); and (3) an action for relief from retaliatory conduct based on protected activity, *see*

§ 3730(h). *United States ex rel. Wilson v. Graham Cty. Soil & Water Conservation Dist.*, 367 F.3d 245, 248 (4th Cir. 2004), *rev'd on other grounds*, 545 U.S. 409 (2005). The VFCA provides three corresponding causes of action. *See* 32 V.S.A. § 632(a) (civil action by Attorney General); § 632(b) (qui tam action filed by individual); § 638 (action for relief from retaliatory acts based on protected conduct).

VitalCore asks the Court to dismiss Dr. Zazzali's retaliation claim (Count I) because the Complaint does not comply with the VFCA's mandatory filing requirements. (Doc. 11-1 at 5.) VitalCore contends that the VFCA provides the following requirements as a "mandatory prerequisite" for bringing a qui tam suit: the complaint shall be filed in camera, remain under seal for at least sixty days, and shall not be served on the defendant until the court so orders. (*Id.*); *see also* 32 V.S.A. § 632(b)(1). VitalCore points the Court to the policies animating similar requirements in the federal FCA, including (1) allowing the matter to remain under seal for a period of time so the government may determine whether it has already been investigating the identified claims and whether it will intervene in the action, and (2) safeguarding a defendant's reputation from any stigma associated with a potential government investigation and from public accusations that may be unfounded. (Doc. 11-1 at 5.)

Dr. Zazzali is not bringing a qui tam action. He has brought a claim under the VFCA's anti-retaliation provision. *See* 32 V.S.A. § 638; (Doc. 5 at 6–7, ¶¶ 32–39.) The Vermont Supreme Court has not specifically addressed whether the filing requirements for qui tam actions also apply to retaliation claims. However, the Second Circuit has determined that the mandatory filing requirements in the federal FCA do not apply to retaliation claims. *United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 1000 (2d Cir. 1995) ("Section 3730(h) retaliation claims, unlike § 3730(b) qui tam claims, are not subject to the procedural requirements of

6

§ 3730(b)(2). . . ."); *see also Hayes v. Dep't of Educ. of City of New York*, 20 F. Supp. 3d 438, 450 (S.D.N.Y. 2014) (same).

The plain language of the VFCA is consistent with this understanding. The VFCA's mandatory filing requirements pertain to civil actions brought by a "relator" on behalf of the "relator and the State" and "in the name of the State"—that is, qui tam actions. 32 V.S.A. § 632(b)(1); *see Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 768 n.1 (2000) ("*Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means "who pursues this action on our Lord the King's behalf as well as his own."). Thus, § 632(b) lays out procedural requirements for qui tam actions. By contrast, retaliation claims are not qui tam actions because a plaintiff may bring suit solely on one's own behalf. *See* 32 V.S.A. § 638 ("Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent . . . [is] discriminated against in the terms and conditions of employment because of lawful acts done . . . in furtherance of an action under section 632 of this chapter, or other efforts to stop one or more violations of this chapter . . . . An employee, contractor, or agent may bring an action . . . for the relief provided in this section."). Therefore, the procedural requirements of § 632 do not apply to Dr. Zazzali's VFCA retaliation claim.

Furthermore, the policy considerations underlying qui tam procedural requirements are not implicated in retaliation actions. Because a retaliation action is not in the nature of a qui tam suit on behalf of the plaintiff and the State, the qui tam procedural safeguards are not necessary to protect a defendant from the potential stigma associated with a public investigation of an entity's conduct by the State. Finally, as a retaliation claim under § 638 does not contemplate

7

government intervention, a sealed filing is not necessary to permit the government an opportunity to intervene as it might elect to do in a qui tam suit.

The Court declines to dismiss the Complaint on the ground that Dr. Zazzali failed to comply with qui tam procedural requirements in bringing a retaliation claim under 32 V.S.A. § 638.

B.      **The Complaint adequately pleads protected actions under the VFCA.**

VitalCore contends that Plaintiff's retaliation claim fails as a matter of law because the alleged fraudulent submission to the State did not constitute "a claim for payment" from the government. (Doc. 11-1 at 6.) VitalCore likens this case to *Dookeran v. Mercy Hospital of Pittsburgh*, 281 F.3d 105 (3d Cir. 2002), where the disputed submission to the government was an application requesting that a hospital be designated a clinical center for a research study. The Third Circuit held that the allegedly false document submitted to the government was not a "request or demand . . . for money or property" as required to be a "claim." 281 F.3d at 108. The plaintiff could not have been acting in furtherance of an FCA action under the circumstances and therefore he was not engaged in "protected activity" within the meaning of the statute. In other words, the retaliation claim failed as a matter of law because the document could not have been the basis of a viable action under the FCA. *Id.* at 109.

Subsequent to the *Dookeran* decision, however, Congress amended the FCA in 2009, which "had the effect of broadening the universe of protected conduct under § 3730(h) [the anti-retaliation provision], at least with respect to 'efforts to stop' FCA violations.: *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 97 (2d Cir. 2017) (quoting amended § 3730(h)).[2] The holding in *Dookeran* was based on the FCA's pre-amendment language limiting

---

[2] To illustrate the broadening of protected conduct effected by the 2009 amendment, *Chorches* included the following comparison of the pre- and post-amendment language: An employee who is discharged, suspended, or

8

protected conduct to "lawful acts done . . . in furtherance of an action" under the FCA. *Dookeran*, 281 F.3d at 107–08. *Dookeran* reasoned that because "conduct is protected if taken in furtherance of an action 'filed or to be filed,'" employees seeking whistleblower protection must show "that there at least be a distinct possibility that a viable FCA action could be filed." *Id.* at 108 (emphasis omitted).

However, the Second Circuit has explained that the 2009 amendments expanded anti-retaliation protections to include employees retaliated against for trying to prevent FCA violations from occurring at all:

> Prior to 2009, § 3730(h) provided a non-exclusive list of specific "lawful acts" done in furtherance of an FCA action that protected an employee, and it did not include the "other efforts to stop . . . violations" language that is now part of the statute. . . . Thus, the 2009 amendment had the effect of broadening the universe of protected conduct under § 3730(h), at least with respect to "efforts to stop" FCA violations. At least one of the authors of the amendment, Congressman Howard L. Berman, contended that § 3730(h) was amended "so that it is clear that it covers . . . retaliation against not only those who actually file a qui tam action, but also against those who plan to file a qui tam that never gets filed, who blow the whistle internally or externally without the filing of a qui tam action, *or who refuse to participate in the wrongdoing*."

*Chorches*, 865 F.3d at 97 (alteration in original) (citation modified). Because Dr. Zazzali alleges retaliation based on "lawful acts in furtherance of an effort to stop" false claims—language that could not have been before the *Dookeran* court in 2002—*Dookeran* does not require dismissal of Dr. Zazzali's retaliation claim.[3] (Doc. 5 at 6–7, ¶¶ 32–39.)

---

threatened because of "lawful acts done" by the employee "in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter" is entitled to anti-retaliatory relief. *Id.* at 97 n.32.

[3] VitalCore defines "protected activity" as "[a]ctions taken in furtherance of a *qui tam* suit" but also correctly identifies that protected activity includes "lawful acts done in furtherance of efforts to stop a False Claim[s] Act violation." (Doc. 11-1 at 7–8.) The Court interprets VitalCore's use of the phrase "actions taken in furtherance of a *qui tam* suit" to mean "protected activity" but emphasizes that a retaliation claim does not require showing that a viable *qui tam* suit could be filed.

9

VitalCore cites additional cases for the principle that a successful retaliation action requires a viable FCA action. Several of the cited cases pre-date the 2009 amendments to the FCA and thus are inapposite to the claim in this case. (Doc. 20 at 3–5 (citing *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166 (9th Cir. 2006), *Hutchins v. Wilentz, Goldman, & Spitzer*, 253 F.3d 176 (3d Cir. 2001), and *Zahodnick v. Int'l Bus. Machs. Corp.*, 133 F.3d 920 (4th Cir. 1997) (per curiam))). The remaining cases are distinguishable because the employees brought qui tam actions, not retaliation actions. (*Id.* (citing *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 186–87 (2016), *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257 (D.C. Cir. 2010), and *United States ex rel. Quartararo v. Cath. Health Sys. of Long Island*, No. 12-CV-4425 (MKB), 2017 U.S. Dist. LEXIS 50696 (E.D.N.Y. Mar. 31, 2017))).)

After the 2009 FCA amendments, a retaliation claim requires a plaintiff to show that: (1) they engaged in activity protected under the statute; (2) the employer was aware of such activity; and (3) the employer took adverse action against him because he engaged in the protected activity. *United States ex rel. DaPolito v. Applied Memetics, LLC*, Case No. 5:21-cv-270, 2024 WL 5316335, at *316 (D. Vt. Dec. 4, 2024) (citing *Chorches*, 865 F.3d at 95). "Protected activity" under the VFCA is substantively similar to the federal FCA. *Compare* 32 V.S.A. § 638(a) *with* 31 U.S.C. § 3730(h). Therefore, the Court assesses the adequacy of the retaliation allegations under the FCA. 32 V.S.A. § 641(b); *see also DaPolito*, 2024 WL 5316335, at *316–19 (applying retaliation test for federal FCA claims to retaliation claims under federal and state FCAs, including the VFCA).

According to VitalCore, Dr. Zazzali has not adequately pleaded retaliation based on protected activity because he fails to allege that any claim was actually submitted to the

government for payment.[4] (Doc. 11-1 at 6–9.)[5] As discussed above, however, a plaintiff is not required to allege submission of a fraudulent claim to adequately state a retaliation claim. Such a requirement is also inconsistent with the plain language of the statute, which protects an employee who engages in "efforts to stop" fraudulent conduct. 32 V.S.A. § 638(a). VitalCore's interpretation would permit an undesirable result: an employee who tries and fails to prevent his employer from submitting false claims enjoys the protection of the FCA, while an employee who succeeded in preventing false claims exposes himself to retaliation with no legal recourse. Such an outcome is incongruous with the legislature's intent to protect those "who blow the whistle internally." *Chorches*, 865 F.3d at 97; *see also id.* at 98 ("[T]he FCA's anti-retaliation provision . . . broadly protects efforts to stop even a single violation of the FCA. . . .").

In short, Dr. Zazzali need not plead the submission of a fraudulent claim. A "refusal to engage in the fraudulent scheme, which under the facts as pled was intended and reasonably could be expected to prevent the submission of a false claim to the government, can constitute protected activity" under the VFCA. *See id.* at 96. *Chorches* offers guidance on when a plaintiff's refusal to act rises to the level of protected activity. According to the complaints in that case, Defendant "engaged in a scheme to fraudulently obtain reimbursement from Medicare by falsely certifying ambulance transports as medically necessary and submitting claims that it knew were

---

[4] VitalCore does not appear to challenge the remaining two elements of the retaliation claim (that VitalCore was aware of protected activity and that VitalCore took adverse action against Dr. Zazzali because of the protected activity). Given the allegations that Dr. Zazzali voiced his concerns on several occasions to VitalCore supervisors, and the allegation that Dr. Sullivan acknowledged that Dr. Zazzali's reported concerns about the allegedly forged signature contributed to the decision to terminate his employment, the Complaint adequately alleges the remaining elements of a retaliation claim. (Doc. 5 at 4–6.)

[5] VitalCore presents this argument in two separate subsections, but the argument is substantively the same. Compare (*id.* at 6–7 (retaliation claims fails under *Dookeran* because Dr. Zazzali has not pleaded the submission of a false claim for payment to the government), *with id.* at 7–9 (retaliation claim fails on "protected activity" grounds because Dr. Zazzali did not plead any facts showing the submission of a false claim for payment to the government)).

not properly reimbursable under the rules and regulations governing payments by Medicare." *Id*. at 75–76. The Emergency Medical Technicians (EMTs) involved in the transports were required to complete Patient Care Reports (PCRs) that, among other details, documented the condition of the person being transported. *Id*. at 76. The EMT's "description of the transported person's condition determined[d] whether [the transport] is treated as 'medically necessary'" and therefore reimbursable by Medicare. *Id*. Plaintiff refused to falsify a PCR, and his employment was ultimately terminated. *Id*. at 78.

The Second Circuit held that the EMT engaged in protected activity when he refused to falsify the PCR. *Id.* at 96–97. As *Chorches* reasoned, "while refusing to falsify a single [report] could not have put the brakes on [the] fraudulent scheme as a whole," the plaintiff "had reason to believe that his refusal to alter" the report "would make it difficult, or even impossible, for [the defendant] to file a false claim for that particular [transport], thus preventing or hindering at least *one* violation of the FCA." *Id.* at 96 (alteration in original). Moreover, the plaintiff "did not simply omit, fail, or neglect to fill out the [report] after being instructed to do so—he verbally refused to alter the document as requested . . . and, despite [the] threat of termination, failed to" schedule another time to fabricate and submit the report. *Id.*

Under the reasoning of *Chorches*, Dr. Zazzali has sufficiently pleaded that he engaged in protected activity. First, according to the allegations, when Dr. Zazzali discovered that VitalCore forged his signature on the policies and procedures manual and submitted it to Vermont state officials,[6] he reported it to multiple superiors, including his immediate supervisor, Dr. Stephanie Sullivan (Doc. 5 at 2–3, ¶¶ 9–11, 13), VitalCore's CEO Viola Riggin (*id.* at 3, ¶ 11), and

---

[6] VitalCore also briefly contends that the Complaint does not contain "the requisite sufficient particularity" regarding the allegation that VitalCore forged Dr. Zazzali's signature and submitted the document to state officials. (Doc. 11-1 at 8.) The particularity requirement of Rule 9(b) does not apply to retaliation claims under the FCA. *Chorches*, 865 F.3d at 95.

VitalCore's director of nursing, Heather Ungeheur (*id.* at 4, ¶ 20). After VitalCore retracted the version of the policy manual with Dr. Zazzali's signature and instructed Dr. Zazzali to sign the manual and re-submit it, Dr. Zazzali refused because he had observed multiple instances of VitalCore failing to comply with the policies contained in the manual. (*Id.* at 5, ¶¶ 21–23.) VitalCore warned Dr. Zazzali that if he did not sign the manual, "Vermont would not pay VitalCore as scheduled." (*Id.* ¶ 22.) Dr. Zazzali resisted, informing VitalCore on two separate occasions of his concern that signing the manual would "implicate him in a False Claims Act violation." (*Id.* ¶¶ 23–24.) Whether or not the manual itself constitutes a "claim" under the VFCA, and drawing all reasonable inferences in his favor, Dr. Zazzali's repeated refusal to sign the manual or to allow VitalCore to submit a manual with a forged signature would "make it difficult, or even impossible" for VitalCore to request or demand money under its contract with the State of Vermont. *See Chorches*, 865 F.3d at 96; *see also Pilat v. Amedisys, Inc.*, 2024 WL 177990, at *2 (2d Cir. 2024) (summary order) (holding that complaint met protected activity prong when plaintiff refused to falsely recertify a Medicare patient for home health care because it was "unethical," complained to his supervisors about safety concerns related to overscheduling patient visits, and alleged that defendant fraudulently billed for patient visits as though they met the length required by government standards). Therefore, the Complaint sufficiently alleges that Dr. Zazzali engaged in a protected activity.

      **C.    Because Dr. Zazzali's Complaint survives dismissal, attorney's fees are not warranted.**

VitalCore contends that the Court should award it attorney's fees under the VFCA, which permits a court to award a defendant "reasonable attorney's fees and expenses if the defendant prevails in the action" and the claim was "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 32 V.S.A. § 637. The Court declines to do so here because

Dr. Zazzali's Complaint adequately states a retaliation claim under the VFCA and thus is not clearly frivolous or without merit at this early stage.

## II. The VFCA does not preempt Dr. Zazzali's wrongful termination claim.

Dr. Zazzali also brings a claim of wrongful discharge in violation of public policy under Vermont common law. Dr. Zazzali alleges that VitalCore terminated his employment in retaliation for his attempts to stop VitalCore from submitting false claims to the State of Vermont and for opposing VitalCore's failure to provide adequate medical care for persons incarcerated by the DOC. (*See* Doc. 5 at 8–9, ¶¶ 40–49.)

VitalCore contends that Dr. Zazzali's wrongful discharge claim must be dismissed as a matter of law because "there can be no wrongful discharge claim under Vermont law when there is a statutory remedy." (Doc. 11-1 at 10.) VitalCore claims that the VFCA "provides its own remedy for the alleged violations," and therefore the VFCA preempts Dr. Zazzali's common law claim. (*Id.* at 11.)

As an initial matter, the VFCA expressly contemplates that common law claims remain available to a plaintiff in an VFCA action. The statute notes that its provisions "are not exclusive, and the remedies provided for . . . shall be in addition to any other remedies provided for in any other law or available under common law." 32 V.S.A. § 641(a); *see also, e.g.*, *John Russo Indus. Sheetmetal, Inc. v. City of Los Angeles Dep't of Airports*, 29 Cal. App. 5th 378, 386, 240 Cal. Rptr. 3d 217, 222 (2018) (substantively similar language in California's FCA expressly provides that FCA does not preempt other legal remedies); *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1034 (S.D. Ohio 2016), *aff'd*, 714 F. App'x 565 (6th Cir. 2017) (similar language in Ohio publicity statute signifies that statute does not preempt common law claim for invasion of privacy); *Baltimore & Ohio Chicago Terminal R. Co. v. Soo Line R. Co.*, 646 F. Supp. 327, 331

(N.D. Ill. 1986) (similar language in interstate commerce act preserved most common law remedies).

As this Court has explained, "[u]nder Vermont law, where a statute creates a right or remedy unknown at common law, the statutory remedy preempts a common law cause of action." *Decker v. Vermont Educational Television, Inc*., 13 F. Supp. 2d 569, 573 (D. Vt. 1998) (explaining that common law claims of disability discrimination are preempted in action asserting violation of the Vermont Fair Employment Practices Act, but common law wrongful termination claims not asserting disability discrimination are not preempted by the statute).

The Complaint in part alleges that Dr. Zazzali's termination violated public policy because it was retaliation for "his expressed opposition to VitalCore's failure to provide health care for inmates in accordance with prevailing medical standards in violation of 28 V.S.A. § 801." (Doc. 5 at 8, ¶ 45); 28 V.S.A. § 801 ("The Department shall provide health care for inmates in accordance with the prevailing medical standards.") The statute does not provide a remedy. 28 V.S.A. § 801(e)(4) (noting that statute is not intended to "create a new or additional private right of action"). Vermont courts discern state public policy from statute, among other sources. *See Payne v. Rozendaal*, 147 Vt. 488, 492–95 (1986). At this stage of the case, these allegations plausibly state a claim for wrongful discharge contrary to public policy. Dr. Zazzali's wrongful discharge claim also appears to address a public policy distinct from the policies embodied in the VFCA, further indicating that statutory preemption of this common law claim is not warranted.

Therefore, Dr. Zazzali's claim for wrongful discharge is not preempted by the VFCA.

**Conclusion**

For these reasons, the Motion to Dismiss (Doc. 11) is DENIED.

Dated at Burlington, in the District of Vermont, this 3rd day of July 2025.

*/s/ Kevin J. Doyle*
United States Magistrate Judge
